FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

2018 JUN 18 PM 4:01

DAIS ANALYTIC CORPORATION,
a New York Corporation,
    Plaintiff,

CLERK, DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

vs.

Case No.: 8:18cv1458T17TGW

SOEX (HONG KONG) INDUSTRY
& INVESTMENT CO. LTD.,
and LIWEI CAO, an individual,

    Defendants,
_____/

## COMPLAINT FOR CIVIL DAMAGES

Plaintiff DAIS ANALYTIC CORPORATION, sues SOEX (HONG KONG) INDUSTRY & INVESTMENT CO. LTD. and LIWEI CAO, for breach of contract and theft of trade secrets. The Plaintiff hereby alleges as follows:

### NATURE OF THE CASE

This is an action for breach of contract and theft of trade secrets against the Defendants, SOEX (HONG KONG) INDUSTRY & INVESTMENT CO. (hereafter referred to as SOEX) and LIWEI CAO (hereafter referred to as CAO) in such causes of action as set forth herein.

### JURISDICTION

Plaintiff brings this complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000. Actions under 18 USC Chapter 90, are enforceable in the United States District Court pursuant to 18 USC §1936 (c).

## THE PARTIES

1. Plaintiff, DAIS ANALYTIC CORPORATION is a New York Corporation. DAIS is a public corporation located in the Tampa Bay area and is a local business and employer within the Middle District of Florida. DAIS has developed and is commercializing applications using its technology. The first commercial product is an energy recovery ventilator ("ERV") for use in commercial Heating, Ventilating, and Air Conditioning (HVAC) applications. In addition to direct sales of its products, DAIS licenses its nanostructured polymer technology to strategic partners and is in various stages of development with regard to other applications employing its base technologies.

2. The Defendants are SOEX and its operating entity called Zhongshan Trans-Tech New Material Technology Co. Ltd. Zhongshan, China herein after referred to as SOEX. SOEX is a foreign limited company organized under the laws of the Hong Kong Special Administrative Region and People's Republic of China ("PRC"), and is located at the address of Room 11-2-1103 11/F Kowloon Bldg 555, Nathan Rd. Mongkok KL, Hong Kong, Defendant SOEX is a Defendant in the matter of Dais Analytic, Corporation v. Soex (Hong Kong) Industry & Investments Co. Ltd. In the Middle District Case Number 8:15-cv-2362-T-35EAJ.

3. Defendant, LIWEI CAO is an individual, on information and belief a resident and citizen of the State of California, and former employee of DAIS. CAO worked as a technology-based employee who worked on DAIS's proprietary polymer and other technologies.

4. The theft of the trade secrets from the Plaintiff DAIS did occur from Defendant CAO being employed and located at the location of DAIS in Pasco County, Florida where such facilities, work being done, computers, website and other matters are located.

## RELEVANT FACTS APPLICABLE TO ALL COUNTS

5.  Plaintiff is in the business of developing and is commercializing its ERV and other applications using its technology. The first commercial product is an energy recovery ventilator ("ERV") for use in commercial Heating, Ventilating, and Air Conditioning (HVAC) applications. In addition to direct sales of its products, DAIS licenses its nanostructured polymer technology to strategic partners and is in various stages of development with regard to other applications employing its base technologies.

6.  Specifically, during the time it has been in business, Plaintiff has developed the highly profitable proprietary information and confidential tools and materials, including, without limitation, the patents, protocols and methodologies, relating to the ERV and other technologies. This information is referred to in the Confidential Agreement and more fully described below as "Confidential Information."

7.  This Confidential Information also specifically includes the operational techniques, processes, formulas, protocols and interfaces associated with the ERV and other technologies developed and owned by DAIS.

8.  This Confidential Information also specifically includes all patents, trademarks and trade names.

9.  Plaintiff's Confidential Information has been developed by Plaintiff over time and Plaintiff has put forth a substantial investment of over 10 years in creating and maintaining said information and materials. Plaintiff Corporation holds 16 granted US patents, 3 Chinese patents, and 1 Hong Kong patent and currently has 3 additional applications pending, some of which are not yet publicly visible. Portions of applications that have been issued patents still

have cases in prosecution for additional claims. A complete list of Dais patents and applications is shown below:

**Issued Patents**

| Patent Number | Description |
| --- | --- |
| US 5,468,574 | Fuel cell incorporating novel ion-conducting membrane |
| US 5,679,482 | |
| U.S. Patent No. 6,841,601 | Crosslinked polymer electrolyte membranes for heat and moisture exchange devices |
| U.S. Patent No. 6,413,298 | Water and ion conducting membranes and uses thereof |
| U.S. Patent No. 6,383,391 | Water and ion conducting membranes and uses thereof |
| U.S. Patent No. 6,110,616 | Ion conducting membrane for fuel cell |
| U.S. Patent No. 7,179,860 | Crosslinked polymer electrolyte membranes for heat, ion and moisture exchange devices |
| U.S. Patent No. 7,990,679 | Nanoparticle Ultra Capacitor |
| U.S. Patent No. 8,222,346B2 | Novel Coblock Polymers and Method for Making Same |
| U.S. Patent no. 8,500,960B | Multi Phase Selective Transport Through A Membrane |
| U.S. Patent No. 8,586,637 | Stable and Compatible Polymer Blends |
| U.S. Patent No. 8,470,071 | Enhanced HVAC Systems and Methods |
| U.S. Patent No. 9,293,269 | Ultracapacitor Tolerating Electric Field of Sufficient Strength |
| U.S. Patent No. 9,283,518 | Fluid Treatment Systems and Methods Using Selective Transfer Membranes |
| U.S. Patent No. 9,013,155 | Energy storage devices including a solid multilayer electrolyte |
| U.S. Patent No. 9,393,557 | Anionic Exchange Electrolyte Polymer Membranes |
| China CN 101,641,146B (Appl. #ZL2008009211.4) | Multi Phase Selective Transport Through a Membrane |
| Hong Kong HK 1,139,888 | Multi Phase Selective Transport Through a Membrane |
| China CN102804303B (Appl. #ZL201180012841.9) | Energy storage devices including a solid multilayer electrolyte |
| China CN103203185B (Appl. #ZL201310052408.9) | A Dryer Having a Drying Chamber Comprising Heated Air |
| **Active Patent Applications** | |
| WO/2011/085917 | |

|  | Energy Storage Devices Including a solid Multilayer Electrolyte |
|---|---|
| WO/2008/089484 | Multiphase Selective Transport Through a membrane |
| WO/2009/002984 | Stable and Compatible Polymer Blends |
| PCT/US2016/056064 | Evaporative chilling systems and methods using a selective transfer membrane |
| US 15/969,449 | Compact membrane-based heat and mass exchanger |

10. Defendant CAO is listed as one of several inventors on four of these issued patents.

11. Every single patent and application listed above mentions some form of Aqualyte material in one way or another. The composition of matter patents claims a broad range of different embodiments of Aqualyte technology, such as different starting manufacturing practices and/or techniques to improve performance in different applications.

12. The machine patents claim various applications and uses of Aqualyte technology that Dais envisions and protects different methods of manufacturing and fabricating these products. Together, these patents seek to protect Plaintiff's business by making it difficult for competitors to produce materials with the same performance and abilities as Aqualyte and preventing the use of these and similar materials in protected applications and products that Plaintiff invented and patented.

13. Accordingly, if any of Plaintiff's Confidential Information was revealed or disclosed for use by competitors, potential competitors or otherwise used in any manner other than to the benefit of Plaintiff, it would cause immediate and irreparable harm to Plaintiff. The Non-Disclosure Agreements with Defendant's CAO and SOEX were emplaced for the protection of the Plaintiff's business and intellectual confidential property.

**Facts as to LIWEI CAO:**

14. On or about January 31, 2001, CAO entered an employment agreement with DAIS, which included CAO agreeing to terms of employment which specifically included entry into a specific agreement which was an Employee Non-Disclosure and Non-Compete Agreement.

15. The terms of such agreement include specific restrictions and terms that included, in part:

   a. That the Company's confidential information was valuable, special and unique asset of the Company's business, and that access to the Company's technology was a part of CAO's agreement and employment.

   b. That CAO would not make use of such confidential information for their own or any third parties benefit following employment.

   c. CAO agreed that such proprietary information, which included the certain polymer and use of such materials in produced technologies, was and continued to be the property of the Company, during and for all times after the termination of employment with DAIS.

16. As part of her employment with DAIS, CAO had responsibilities which included scaling a material called Aqualyte, which was a material upon which numerous patents and work had been done by DAIS which had begun in 1995. Scaling is a way of saying taking it from making it in beakers to a commercial facility and quantities. While she understood the high-level chemistry related items she lacked the commercial background to do this work.

17. During the term of CAO's employment from 2001 – 2014 DAIS researched and developed numerous improvements including scaled a material DAIS developed with Dow

chemical which was called ESI Index Random Block Polymer, and worked with variants such as a Kraton product called Styrene Ethylene Butadiene Styrene (SEBS) in two forms. First cationic and then in the 2010 – 2012 time frame the anionic version.

18.     This body of work is called 'synthesis' by DAIS. The goal of this process is to 'sulfonate' a base resin, which is typically sourced from Dow Chemical, Kraton, and other manufacturers, to create a sulfonated product material called an engineered resin, which is essential and proprietary to DAIS, as well as the improvements by DAIS. DAIS alters the molecular structure of the base resin, changing its properties and creating its unique and proprietary Aqualyte. The base resin is mixed with solvents (liquid chemicals) and other materials which were of proprietary nature to DAIS, then stirred, heated, then stopped at just the right time, and the solvents are taken away. The resulting polymer material is Aqualyte, usually in solid "crumbs" that can be further processed into optimal shapes or coatings.

19.     This material which is essential and proprietary to DAIS, as well as the improvements by DAIS is called an engineered resin. In its raw form it looks like many small white eraser heads. The resin is mixed with solvents (liquid chemicals) and other materials which were of proprietary nature to DAIS, then stirred, heated, then stopped at just the right time, and the solvents are taken away. At that point there is "crumb" left. The goal of the process is to 'sulfonate' the base resin which was from Dow Chemical, Kraton, and other sources. DAIS alters the molecular structure of the base resin changing its properties creating its unique and proprietary Aqualyte. This body of work is called 'synthesis' by DAIS.

20.     During all these time periods CAO was working with the Dais engineering team determining the best rates moisture could transfer thru the Aqualyte membrane, which involved many small synthesis runs varying certain parameters, and many types of substrate experiments.

21.     Dating back to 2003, as CAO worked with DAIS, the Company found an intersection between the polymer's needed features (and how to create them), and the same with the substrate to make Aqualyte DAIS's first product, which when used in the HVAC industry as an energy recovery ventilator (ERV). DAIS named their proprietary technology "ConsERV." Later (2010 – 2014) embodiment of the technology appear in several other of DAIS's applications including but not limited to 'NanoClear', 'NanoAir', and 'PolyCool'.

22.     During all the time of invention, experimentation and creation of Aqualyte, the proprietary property of DAIS, CAO was employed and involved in all aspects of creating such materials under DAIS.

23.     CAO until her departure from employment with DAIS on August 29, 2014, was involved with all of the described and other proprietary matters for membrane developments, including working on NanoClear (a water cleaning technology), a special form of battery ultra-capacitor (store electricity), NanoClear (a novel contaminated water cleaning process), PolyCool (a disruptive cooling tower and membrane evaporator) and NanoAir (a full HVAC system), as well as other highly specialized applications.

24.     During all such time, CAO was given access to and obtained a large degree of knowledge as to all matters DAIS possessed and worked on as proprietary matters for polymers including looking at new base resins, newer synthesis techniques which use less offensive solvents, and more efficient (less expensive) processes as well as ways to tape cast the material.

25.     During the time period of employment CAO came into contact with and did meet a contracted party who DAIS had a contractual relationship in the Peoples Republic of China (China). CAO met and came to know the party in charge of a company called Soex (Hong

Kong) Industry & Investment Co., Ltd. (Soex) through the work with DAIS who was transacting business under contracts and agreements with Soex in China.

26. In 2014, the Company completed its second delivery of Aqualyte membrane for use in ConsERV products under a contract with Soex.

27. On or about December 2014, SOEX breached the agreements with DAIS, which resulted in a termination of all agreements between the two parties in May of 2015, and a lawsuit being filed, which suit is currently pending in the District Court for the Middle District of Florida under case number 8:15-cv-2362-T-35EAJ.

28. At the time of her departure from DAIS, CAO was fully aware and had been involved in the work that had been done with Soex, and the matters that were to be delivered including all polymer-based technologies and products.

29. In full awareness of the relationship and issues of DAIS with Soex, for the sale and delivery of DAIS's proprietary technology into China and the breaches of such agreements by Soex, CAO had departed employment, with full knowledge of her contractual obligations which existed in the subject Non-Disclosure Agreement.

30. On or about March 2017, DAIS became aware that CAO was actively working with Soex to circumvent the rights of DAIS under the non-disclosure obligations and was sharing and working with Soex to make and sell such polymers and materials for sale within China, in direct competition and to the detriment of DAIS.

31. CAO took such actions in knowing contravention and in direct breach of her non-disclosure agreement, since she is using the same polymer knowledge that she gained through employment with DAIS.

32. With full knowledge of the obligations and duties under the Agreement, CAO, in 2015 through April 2017, did share the intellectual property of DAIS with Soex, and help Soex obtain and produce the same kind of materials, which included all of the intellectual property and confidential trade secrets of DAIS in such polymer material that was being made and supplied to Soex for sale into the China market. The same market where DAIS had a material agreement with Soex, which was the subject of the cited Federal lawsuit.

33. CAO knowingly and willfully violated the terms of the Non-Compete and Non-Disclosure Agreement she had with DAIS, breaching such contract, and knowingly violated the patent and intellectual property rights that DAIS held in such materials.

**Facts as to SOEX**

34. SOEX immediately began a relationship with CAO on information and belief during her employment with Dais and enticed her to leave such employment on or about August 2014.

35. On or about March 2017 and continuing to this day, DAIS became aware that SOEX was instrumental in the theft of the intellectual property of DAIS for use and sale by SOEX.

36. On or about March 2017 through to this day, it came to the attention of DAIS that SOEX was directly using the same kind of materials, which included all of the intellectual property and confidential trade secrets of DAIS in such polymer material that was being made and supplied to Soex for sale into the China market. The same market where DAIS had a material agreement with Soex, which was the subject of the cited Federal lawsuit.

37. In concert with CAO, SOEX intentionally breached its agreement with DAIS as to a Distribution Agreement which was entered into by DAIS on or about April 24,

2014, and legally terminated by DAIS on or about May 29, 2015.

38. As a covenant to the SPA, SOEX agreed to enter to issue stock in a Chinese subsidiary that was to be created in China. This promise by SOEX was repeated in the Distribution Agreement with SOEX. which DAIS relied upon before issuing SOEX the DAIS common stock called for in the SPA.

39. Additionally, the Distribution Agreement imposed the payment of distribution and licensing payments to DAIS by October 2014, as well as royalty payments and a commitment from the Defendants to purchase nano-material membrane and other products from DAIS. In return, the SOEX obtained the right to distribute and market ConsERV (and potentially other DAIS Products) for incorporation in ventilators sold and installed in commercial, industrial and residential buildings, transportation facilities and vehicles (the "Field") in mainland China, Hong Kong, Macao and Taiwan (the "Territory").

40. Under the Distribution Agreement, SOEX received an exclusive license in a certain defined territory to use DAIS's intellectual property in the manufacture and sale of ConsERV and potentially other DAIS Products (as defined in the Distribution Agreement") in such territory.

41. SOEX was under the obligation of confidentiality and protection of the confidential information and intellectual property of DAIS breached such agreements by theft and use of the intellectual property by counterfeiting the products of DAIS.

42. DAIS discovered that SOEX had been counterfeiting the intellectual property of DAIS, which was protected under the agreements, on or about March of 2017 when it was made aware of SOEX's operating entity, Zhongshan Trans-Tech New Material Technology Co. Ltd.

Zhongshan, China, meeting clients in China extolling the fact they employed the lead Dais scientist and a better material to sell. It is important to note while CAO was a member of a team she was hardly the 'lead'.

43. Further, a visit to the Soex website confirmed in both pictures and text Soex's operating entity was, in fact, promoting a material having near complete similarity to the Dais's Aqualyte material.

44. Internal analysis by Dais of the Soex material shows it is nearly identical to the Aqualyte material with subtle, nonperformance effecting, changes likely useful for obtaining Chinese patent coverage without citing Dais's existing position(s) in this area.

45. SOEX's operating entity's web site is not just the material but also the areas of use – HVAC, and Water. While the site has been redesigned as of the first of 2018 the similarity of the two company's (DAIS and SOEX) businesses is unmistakable.

Website pictures: (http://www.tt-transtech.com/)




Guo, Han, and Cao



Guo, Han, Unidentified Person, and Cao



Dais ( Brian Johnson, author) graphic depicting membrane operation

46.     The represented web site materials were obtained from the URL of http://www.tt-transtech.com/, which directly used materials, and graphics identical to the DAIS site which include the exact graphic which was in English originally by DAIS.

47.     It is evident upon analysis of the SOEX that they have violated the rights of DAIS under its intellectual property protections with SOEX, and under its proprietary protections for its Aqualyte materials and uses.

## COUNT I

**BREACH OF CONTRACT- NON-DISCLOSURE AGREEMENT**
**(CAO)**

Plaintiff DAIS hereby sues Defendant CAO for breach of contract for violation of the enforceable non-disclosure agreement. As grounds, therefore, the Plaintiff would state:

48.  Plaintiff DAIS hereby adopts the above factual statements for purposes of this count.

49.  CAO is subject to the non-disclosure agreements between the parties.

50.  CAO entered into such agreement has part of her employment with DAIS, for which she received substantial compensation over the period of her employment, until her departure on or about August 2014.

51.  Such agreement is enforceable against CAO under its terms.

52.  CAO by virtue of her work with SOEX to copy the DAIS products, for SOEX to sell into the Chinese market and otherwise.

53.  CAO's breach of the non-disclosure agreement has caused material and significant damage to DAIS through loss of sales, revenue and marketplace positioning for its products.

54.  CAO's breach of such agreement was not discovered until such products and materials being used by SOEX and other protected information regarding the DAIS materials.

WHEREFORE, Plaintiff DAIS hereby sues Defendant CAO for breach of contract, seeking such damages, attorney's fees and costs as may be determined by the Court, together with such enforcement of such injunctive relief that may be granted.

## COUNT II
## THEFT OF TRADE SECRETS (18 U.S. Code § 1832 and §1836)
## (CAO)

Plaintiff DAIS hereby sues Defendant CAO for theft of trade secrets pursuant to 18 USC § 1832 and §1836. As grounds therefore, the Plaintiff would state:

55. Plaintiff DAIS hereby adopts the above factual statements for purposes of this count.

56. Defendant CAO had access to and did have intellectual property in the form of knowledge, materials, data and documents gained through her employment with DAIS.

57. Defendant CAO knowingly converted such trade secrets of DAIS intellectual property which was used and intended to be used in both interstate and foreign commerce.

58. Defendant CAO knowingly did so for the purposes of gaining an economic benefit for herself through the sale or otherwise of such intellectual property, giving, selling or otherwise delivered such trade secrets to SOEX for SOEX use and sale to the detriment of DAIS.

59. In so doing, CAO knowingly did so with the intent to harm and deprive DAIS of its trade secrets rights and ownership.

60. DAIS took all necessary steps to protect its trade secrets, including protections by the patent filings cited herein, maintenance of data securitization on secured servers, as well as the use of non-disclosure provisions in its agreements including the CAO agreement.

61. DAIS has ascertained that the theft by CAO occurred on or after Mat 11, 2016 when the Defense of Trade Secrets Act came into effect.

62. Defendant CAO is liable for all damages related to such theft caused upon DAIS by her actions, including exemplary damages and attorney's fees.

WHEREFORE, Plaintiff DAIS hereby sued Defendant CAO for trade secret theft pursuant to 18 USC §1836 and §1832, seeking damages, exemplary damages, costs and attorney's fees.

## COUNT III
### THEFT OF TRADE SECRETS (18 U.S. Code § 1832 and §1836)
### (SOEX)

Plaintiff DAIS hereby sues Defendant SOEX for theft of trade secrets pursuant to 18 USC § 1832 and §1836. As grounds therefore, the Plaintiff would state:

63. Plaintiff DAIS hereby adopts the above factual statements for purposes of this count.

64. Defendant SOEX had access to and did have trade secrets in the form of knowledge, materials, data and documents gained through Defendant CAO through her employment with DAIS.

65. Defendant SOEX knowingly received and possessed such trade secrets knowing that the materials were , buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization of DAIS.

66. Defendant SOEX had full knowledge of that such trade secrets were the property of DAIS through their prior business relationship for provision of the very same materials and products that were stolen.

67. Defendant SOEX knowingly converted such trade secrets of DAIS intellectual property for its own use, for replication for products to be sold in China, which is foreign commerce.

68. Defendant SOEX knowingly did so for the purposes of gaining an economic benefit for itself through the replication of DAIS's trade secrets, for sale or otherwise of such products and materials in China to the detriment of DAIS.

69. In so doing, SOEX knowingly did so with the intent to harm and deprive DAIS of its trade secrets rights and ownership.

70. DAIS took all necessary steps to protect its trade secrets, including protections by the patent filings cited herein, maintenance of data securitization on secured servers, as well as the use of non-disclosure provisions in its agreements including the CAO agreement, as well as agreements with SOEX.

71. DAIS has ascertained that the theft by CAO occurred on or after May 11, 2016 when the Defend Trade Secrets Act came into effect. CAO supplied such information to SOEX from its trade secrets after such date by the evidence DAIS has of publication of such products occurring on or about January 2017.

72. Defendant SOEX is liable for all damages related to such theft caused upon DAIS damages, exemplary damages and attorney's fees.

WHEREFORE, Plaintiff DAIS hereby sued Defendant SOEX for trade secret theft pursuant to 18 USC §1836 and §1832, seeking damages, exemplary damages, costs and attorney's fees.

Dated this 18th Day of June 2018.

                                          Respectfully submitted,

                                        */s/ Craig A. Huffman*
                                        _____
                                        Craig A. Huffman, Esquire
                                        Securus Law Group, P.A.
                                        13046 Racetrack Road, #243
                                        Tampa, Florida 33626
                                        Phone: (888) 914-4144
                                        Email: Craig@securuslawgroup.com