UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIAS ANALYTIC CORPORATION,

    Plaintiff,

v.                                                    CASE NO. 8:18-cv-1458-T-02TGW

SOEX (HONG KONG) INDUSTRY &
INVESTMENT CO. LTD. and LIWEI CAO,

    Defendants.
_____/

## ORDER GRANTING MOTION TO COMPEL ARBITRATION AND MOTION TO STAY PROCEEDINGS

The Court grants Defendant Soex's Motion to Compel Arbitration. Pursuant to paragraph 15(f) of the Distribution Agreement between Plaintiff and Soex (docket 5-1 at page 19), the Court orders arbitration at Honolulu, Hawaii or any other venue should the parties agree. The Clerk shall stay this case pending arbitration.

### FACTS

Plaintiff produces very sophisticated products related to heat and energy exchange and heating/air-conditioning systems. A large number of these processes are protected by patents. Defendant Cao worked for Plaintiff for over ten years. Cao has not been served and is not participating in the litigation. (Dkt. 8, at 1).

Plaintiff and Defendant Soex entered into a Distribution Agreement for Soex to distribute these advanced products in parts of Asia and to manufacture some products under license.  (Dkt. 5-1, at 2).  Both Cao's employment agreement and Soex's Distribution Agreement contain provisions requiring Cao and Soex to protect Plaintiff's ownership of the intellectual property from theft, reverse engineering, modifications, infringement, etc.  E.g. (Dkt. 5-1).

Plaintiff sued Cao and Soex in this case, alleging that Cao in conjunction with Soex stole Plaintiff's trade secrets in these products.  Plaintiff expressly states in paragraph 37 of its complaint that in doing so, Soex breached the Distribution Agreement.  (Dkt. 1, at 10-11; Dkt. 5-1.)  The gravamen of the present complaint is that Cao, in conjunction and induced by Soex, stole the intellectual property behind some of Plaintiff's products.  And, this happened shortly at the time or shortly after the Distribution Agreement between Plaintiff and Soex was terminated.  (Dkt. 1, at 9-10).

Soex's contractual duties and obligations to Plaintiff are set forth in this Distribution Agreement.  (Dkt. 5-1).  As to arbitration, it states:

> [15](f) This Agreement shall be governed by and construed in accordance with the laws of the state of New York without giving effect to the conflicts of laws principles thereof, except that the interpretation and enforcement of this arbitration provision shall be governed by the Federal Arbitration Act.  Any controversy or claim arising out of or relating to this Agreement or the existence, validity, inducement, termination or breach thereof, shall be referred to and finally resolved by arbitration before a single arbitrator in accordance with Commercial Arbitration Rules of the American Arbitration

> Association ("AAA") then pertaining, except where those rules conflict with this provision, in which case this provision controls. The language of the arbitration shall be English, and the place of arbitration should be Honolulu, Hawaii, OR such other place that the parties may mutually agree.

(Dkt. 5-1, at 19). The Plaintiff's operative complaint states expressly that the claim "relates" to the distribution agreement. (Dkt. 1, at ¶ 37). Accordingly, Soex moves to arbitrate.

In its response, Plaintiff agrees that arbitration "would be appropriate" although not compelled as Soex says. (Dkt. 8, at 1). Plaintiff argues that venue in the Middle District of Florida, not Hawaii, is required.

To avoid the plain terms of the arbitration clause in the Distribution Agreement, Plaintiff cites Cao's employment agreement as supporting local, Florida venue. But Cao is not participating in this suit. Likewise, although the Complaint cited in passing a Stock Purchase Agreement between the parties (Dkt. 1, at ¶ 38), this Complaint more clearly and directly alleges violations of the intellectual property protections of the Distribution Agreement. The Stock Purchase Agreement, at docket 8-1, does not relate to this trade secrets theft cause of action in any real way.

That the Hawaii venue is inconvenient or more expensive for Plaintiff may be true. But such is freedom of contract. Soex's decision to litigate a different, earlier law suit between the parties in Tampa does not change the plain text of the arbitration clause cited above.

## LEGAL ANALYSIS

Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1947). The Court conducts a two-step inquiry to decide whether the parties must submit to arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); Klay v. Pacificare Health Sys., Inc., 389 F.3d 1191, 1200 (11th Cir. 2004). The first step is to decide whether the parties agreed to arbitrate the dispute. Mitsubishi Motors Corp., 473 U.S. at 626. "This determination depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." Fleetwood Enter., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002). If the Court determines that the parties agreed to arbitrate, the Court must assess "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." Mitsubishi Motors Corp., 473 U.S. at 628.[1]

---

[1] As set forth above, the distribution agreement sets forth New York as the applicable law to govern and construe the distribution agreement. New York law generally follows the FAA in adopting a policy that favors and encourages arbitration. Nationwide v. Investors, 37 N.Y.2d 91, 95 (1975). Thus, even if the inquiry as to whether the parties must submit to arbitration were done under New York law rather than the FAA, the result would be the same. Under New York law, "a court [must] address three threshold questions on a motion to compel or to stay arbitration: (1) whether the parties made a valid agreement to arbitrate; (2) if so, whether the agreement has been complied with; and (3) whether the claim sought to be arbitrated would be time-barred if

> Whether the parties entered into an agreement to arbitrate is ordinarily an issue for judicial determination. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 295 (2010). In deciding whether the parties agreed to arbitration, the Court applies state law governing the formation of contracts, while at the same time considering the federal policy favoring arbitration. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367, 1367-68 (11th Cir. 2005).

Castro v. Southern Tech. Holdings, LLC, No. 6:18-cv-409-Orl-28TBS, 2018 WL 2122872, *2 (M.D. Fla. Apr. 13, 2018) (Rep. and Recommendation adopted May 8, 2018 at 2018 WL 2122860); Delano v. Mastec, Inc., No. 10-cv-320-T-27MAP, 2010 WL 4809081, at *2 (M.D. Fla. Nov. 18, 2010) ("State law generally governs whether an enforceable agreement to arbitrate exists."); Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 411 n.11 (2d Cir. 2009) ("[The contract's] choice of law clause governs Storm's arbitrability challenge."). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." Delano, 2010 WL 4809081, at *2. Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). And, "a district court must grant a motion to compel arbitration if it is satisfied

---

it were asserted in state court." Smith Barney, Harris Upham & Co., Inc. v. Luckie, 85 N.Y.2d 193, 201-02, cert. denied, 516 U.S. 811, 116 S.Ct. 59, 133 L.Ed.2d 23 (1995) (citing Matter of Cnty. of Rockland [Primiano Constr. Co.], 51 N.Y.2d 1, 6 (1980)).

that the parties actually agreed to arbitrate the dispute." John B. Goodman Ltd. P'ship v. THF Constr., Inc., 321 F.3d 1094, 1095 (11th Cir. 2003).

In the present case, the Distribution Agreement sets forth New York as the applicable law to govern and construe the Distribution Agreement. Under New York law, an enforceable agreement exists when there is "an offer, acceptance of an offer, consideration, mutual assent, and an intent to be bound." Kolchins v. Evolution Mkts., Inc., 128 A.D.3d 47, 59 (N.Y.App.Div. 2015). When an enforceable agreement exists, a court will enforce a "validly executed" arbitration provision within the agreement. See Daniel v. Lehman Bros. Holdings, Inc., 161 A.D. 3d 419, 420 (N.Y.App.Div. 2018). Those requirements are met here.

**ACCORDINGLY**, the parties shall arbitrate under the terms of the Distribution Agreement, docket 5-1 at page 19. The Clerk is directed to stay the case pending resolution of the arbitration proceeding.

**DONE AND ORDERED** at Tampa, Florida, on September 26, 2018.

s/*William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record